IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**DERAN M. FORD**                                                                                          **PLAINTIFF**

v.                                    **CASE NO. 4:23-CV-00064-BSM**

**SOUTHEAST ARKANSAS ECONOMIC
DEVELOPMENT DISTRICT, INC.**                                                              **DEFENDANT**

## ORDER

Southeast Arkansas Economic Development District, Inc.'s motion for summary judgment [Doc. No. 20] is denied on Deran Ford's race discrimination and retaliation claims and granted on his whistle-blower claim.

### I. BACKGROUND

Viewing the record in the light most favorable to Ford, the non-moving party, the facts are as follows.

Ford is a black man who was hired by the district in September of 2021 to serve as its director of workforce development. Deposition of Deran Ford 84:21–23, 139:25–140:18, Doc. No. 22-1 ("Ford Dep."). Patrecia Hargrove, a black woman who serves as the district's executive director, made the offer to hire Ford and was his immediate supervisor. *Id.* 83:22–84:3. Ford was hired to supervise the training vendors that provided services to the district's clients. *Id.* 73:8–74:19. One of those vendors, Pine Bluff Trucking (PBT), provided commercial driver's license training to the district's clients. *Id.* 138:9–22. Shortly after being hired, Ford stopped sending students to PBT based on PBT's operational problems and reports that PBT was discriminating against black students. *Id.* 142:11–23,

148:5–16.  Ford notified Hargrove of his issues with PBT and, after a little pushback, Hargrove went along with Ford's recommendation to suspend the district's contract with PBT.  *Id.* 148:24–149:16, 152:11–153:6; Deposition of Patrecia Hargrove 96:12–25, Ex. A, Doc. No. 32 ("Hargrove Dep.").

In addition to his issues with PBT, Ford expressed concerns with the district's leave policy, its inclement weather policy, its failure to have a remote work policy, and his concern that employees had to drive their personal vehicles to various places when the district had a company car.  Pl.'s Resp. Def.'s Statement of Undisputed Facts ¶ 24, Doc. No. 30 ("Ford SOF Resp.").

In response to these complaints, Hargrove directed Ford to meet with Payton Burgess, the director of human resources and finance, and Shane Knight, the director of solid waste.  Ford Dep. 78:3–19, 131:4–20; Hargrove Dep. 9:5–9, 10:25–11:2; Statement of Facts Not in Dispute for Purposes of Summ. J. ¶ 37, Doc. No. 22 ("District SOF").  When Ford reminded Knight on several occasions that they needed to meet, Knight became upset and yelled at Ford.  Ford SOF Resp. ¶ 38.  Knight told Ford that they did not need to meet to discuss the personnel policy, and that, if anyone did not like the policy, they could stop working for the district.  *Id.*  By email, Burgess asked Ford to send a list of his policy concerns so those concerns could be addressed as efficiently as possible.  Ford Dep. 135:11–23.  Ford did not respond to Burgess's email because he wanted to have an in-person meeting as Hargrove directed.  *Id.* 135:23–146:16.  That meeting never occurred.  District SOF ¶ 41.

The district gives its employees an annual performance review.  Ford Dep. 168:3–8.

Employees scoring less than 70 are placed on a 90-day performance improvement plan. *Id.* In March 2022, Ford was asked to complete a self-evaluation. *Id.* 166:6–15. And, although Knight had no supervisory authority over Ford, he filled out an evaluation of Ford. *Id.* 22:10–12; Deposition of Shane Knight 33:21–34:2, Ex. B, Doc. No. 32 ("Knight Dep."). Knight gave Ford a score of less than 70. Ford Dep. 168:3–24. When Ford, Knight, and Hargrove met to discuss Ford's evaluation, Ford disagreed with Knight's evaluation and said that he was surprised that Knight had evaluated him since Knight did not supervise him and did not know what he did. *Id.* 169:16–170:4. This upset Knight, who raised his voice at Ford. *Id.* 170:18–22. Ford then stated that Knight had mistreated other black employees. *Id.* 170:23–172:3. Ford also stated that Hargrove was allowing the mistreatment of black employees, which angered her. *Id.* 172:8–173:17. Ford then expressed frustration that Knight and Burgess had failed to meet with him regarding company policies. *Id.* 175:10–22. The meeting abruptly ended. *Id.* 169:12–23; District SOF ¶ 52.

The next day, Hargrove fired Ford for insubordination. *See* Termination Letter, Ex. D., Doc. No. 31. This did not comport with the district's typical progressive-step discipline plan. *See* Employee Handbook 13, Ex. C., Doc. No. 32. Before his termination, Ford had never received any disciplinary action. Hargrove Dep. 95:10–23. Some time after firing Ford, the district hired a black woman to replace him. Ford Dep. 239:25–240:8. The district also reinstated PBT as a vendor. Pine Bluff Trucking E-Mail, Ex. G., Doc. No. 31.

More than a year later, on November 21, 2023, Burgess advised Hargrove that several women had complained that Knight inappropriately touched them. Ford SOF ¶ 57.

3

Hargrove directed Burgess to get these complaints in writing. Hargrove Dep. 28:10–22. The next day, Burgess presented five complaints from female employees complaining that Knight had inappropriately touched them, such as rubbing their shoulders, touching their thighs, and brushing up against them. *Id.* 28:23–25, 32:3–33:22. Knight was placed on administrative leave six days later. Knight Dep. 17:8–24. The district then hired outside counsel to conduct an investigation. Hargrove Dep. 51:8–52:4. The investigation concluded that Knight had violated the district's harassment policy by touching employees, but that Knight's touching had not been done in a sexual nature. *Id.* 52:5–14.

After the investigation, the district reinstated Knight. *Id.* 56:23–57:2. The district let Knight keep his titles but stripped him of his supervisory responsibilities, issued him a final warning, and required him to work remotely instead of returning to the office. *Id.* 61:7–13. Knight resigned his full-time position on April 4, 2024 but continues to receive $1,500 per month for part-time work. Knight Dep. 14:7–19, 23:14–18.

Ford is suing the district for race discrimination and retaliation under Title VII and 42 United States Code section 1981, as well as for violating the Arkansas Whistle-Blower Act. The district is moving for summary judgment on all claims.

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Once the moving party demonstrates that there is no genuine dispute of material fact, the non-moving party may not

rest upon the mere allegations or denials in his pleadings. *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). Instead, the non-moving party must produce admissible evidence demonstrating a genuine factual dispute requiring a trial. *Id.* All reasonable inferences must be drawn in the light most favorable to the non-moving party. *Holland v. Sam's Club*, 487 F.3d 641, 643 (8th Cir. 2007). The evidence is not weighed, and no credibility determinations are made. *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008).

### III. DISCUSSION

The district's motion for summary judgment is denied on Ford's race discrimination and retaliation claims and granted on his whistle-blower claim.

A. <u>Race Discrimination</u>

Summary judgment is denied on Ford's race discrimination claims under Title VII and section 1981.

*1. Title VII*

Summary judgment is denied on Ford's Title VII race discrimination claim because, although Ford has provided no direct evidence of race discrimination, *de la Cruz v. N.Y.C. Human Res. Admin. Dep't of Soc. Servs.*, 884 F. Supp. 112, 116 (S.D.N.Y. 1995), *aff'd*, 82 F.3d 16 (2d Cir. 1996) (no showing of "explicit and unambiguous" instances of race discrimination), he has provided enough indirect evidence of discrimination to create an issue of fact for the jury to decide.

To establish a prima facie case of race discrimination under Title VII, Ford must show that (1) he belongs to a protected class; (2) he met his employer's legitimate expectations;

(3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of race discrimination. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). If Ford meets this initial burden, the district must offer a legitimate non-discriminatory reason for firing him. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the district meets its burden, Ford must show that the reason offered by the district was merely pretext for race discrimination. *Id.*

Viewing the facts in the light most favorable to Ford, he has established a prima facie case of race discrimination. First, Ford belongs to a protected class. Second, a reasonable jury could find that Ford was meeting his employer's legitimate expectations because, prior to the events of which he is now complaining, nothing indicates that the district was dissatisfied with his work product. Third, Ford suffered an adverse employment action when he was fired. Fourth, a reasonable jury can infer discrimination because Hargrove treated Knight more favorably than she treated Ford. *See Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (more-favorable treatment of similarly-situated employee who is not in protected class can satisfy fourth element of prima facie case).

The district states that Ford was fired for insubordination, which is a legitimate reason for termination. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc). When the record, however, is viewed in the light most favorable to Ford, a reasonable jury could find that this reason was merely pretext for race discrimination because Knight was treated more leniently than Ford. *See Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1052 (8th Cir. 2006) (pretext may be demonstrated by showing that a similarly-situated employee

who did not engage in protected activity was treated more leniently). Although the district asserts that Knight and Ford were not similarly situated, a reasonable jury could find otherwise. This is true because Knight and Ford both were supervised by Hargrove, they both were subject to the district's employee handbook, and Knight engaged in misconduct that could be considered more serious than the conduct in which Ford engaged. *See Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1230–35 (8th Cir. 2013).

Finally, the district correctly points out that Hargrove, the decision-maker who hired and fired Ford, is also black, and that Ford's predecessor and successor are black. These facts will most likely help the jury in performing its fact-finding function, but do not overcome summary judgment. *See Rinehart v. City of Independence, Mo.*, 35 F.3d 1263, 1266 (8th Cir. 1994) (proof that plaintiff was replaced by a person outside the protected class is not required); *Robinson v. Sears, Roebuck & Co.*, 111 F. Supp. 2d 1101, 1110 (E.D. Ark. 2000) (mere fact that supervisor who made adverse employment decision is of same race as affected employee is not dispositive of employee's race discrimination claim).

### 2. Section 1981

Summary judgment is denied on Ford's section 1981 race discrimination claim because it is evaluated similarly to his Title VII claim, except that Ford must also show that race was the "but-for" cause of his termination. *Comcast Corp. v. Nat'l Ass'n of African-Am. Owned Media*, 589 U.S. 327, 340–41 (2020); *see Wilson v. Legal Assistance of N.D.*, 669 F.2d 562, 563–64 (8th Cir. 1982). Viewing the facts in the light most favorable to Ford, a reasonable jury could find that Ford's race was the but-for cause of his termination. *See*

*Peaster v. McDonald's Corp.*, No. 22 CV 7037, 2023 WL 5387573, at *4 (N.D. Ill. Aug. 22, 2023) (plaintiff can argue that his race combined with his protected activity was a but-for cause of disparate treatment, even if each factor alone would not have been a but-for cause).

    B.    <u>Retaliation</u>

Summary judgment is denied on Ford's retaliation claims. Title VII and section 1981 retaliation claims are analyzed identically. *See Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013). To prevail, Ford must prove (1) he engaged in protected activity; (2) he suffered an averse employment action; and (3) the adverse action was taken because of the protected activity. *See id.* at 737–38. Ford has presented enough evidence to overcome summary judgment because: (1) he engaged in protected activity when he complained about discrimination, *see Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1032 (8th Cir. 2013) (reporting purported discrimination against others is protected activity); *Gustafson v. Genesco, Inc.*, 320 F. Supp. 3d 1032, 1051 (S.D. Iowa 2018) (protected activity includes informal complaints to management); (2) his termination is a materially adverse employment action; and (3) a reasonable jury could find that Ford was fired because he complained about discrimination, *see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 761 (8th Cir. 2004) (plaintiff's firing six days after complaining of discrimination, coupled with lack of disciplinary record, enough to infer pretext).

    C.    <u>Arkansas Whistle-Blower Act</u>

Summary judgment is granted on Ford's whistle-blower claim because it is time-barred. *See* Ark. Code Ann. § 21-1-604(a) (case must be filed within 180 days of the

violation).  This is true because Ford was fired on March 23, 2022, and he did not file this case until January 30, 2023.  Moreover, Ford does not contest that this claim is time-barred. Reply Br. Supp. Def.'s Mot. Summ. J. 7, Doc. No. 34; Pl.'s Br. Supp. Opp'n Def.'s Mot. Summ. J. 37–39, Doc. No. 31; *Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) (claim is waived when party fails to oppose a basis for summary judgment).

## IV. CONCLUSION

For the foregoing reasons, the district's motion for summary judgment is denied on Ford's race discrimination and retaliation claims and granted on his whistle-blower claim.

IT IS SO ORDERED this 31st day of January, 2025.

_____
UNITED STATES DISTRICT JUDGE